UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES of AMERICA,

Case No.: 1:04-cr-10299-PBS-30

v.

**FILED UNDER SEAL. SEE DOCKET
ENTRY ELECTRONIC ORDER 2/6/07
DO NOT FILE ELECTRONICALLY**

GENE ANDERSON, et al
  Defendants.

SENTENCING MEMORANDUM

Preliminary

Defendant offers this sentencing memorandum in support of his motion for a judicial recommendation to the Bureau of Prisons' ("BOP") Residential Drug Abuse Program ("RDAP") and his motion for self reporting to his designated institution.[1]

FACTS

Mr. Anderson requests a judicial recommendation designating him to a BOP facility such as FCI Ft. Dix where he can receive treatment in the RDAP. (Motion, Doc. 639.) He also requests post-sentencing release and self reporting to assure his eligibility on a low security level. (Motion, Doc. 641.)

---

[1] The length of Mr. Anderson's sentence is effectively controlled by the plea agreement (Doc. 447) and his July 7, 2006 plea to an information (Doc. 448) alleging one count of 21 USC §843(b). The statutory maximum is four years' incarceration and one year of supervised release; the plea agreement, at paragraph 3(a), admits to more than 500g of cocaine powder, but less than one kilogram for a level 26 sentence under USSG §2D1.1(c)(4). The PSR finds a Base Offense Level 26, less three for acceptance (PSR ¶¶ 21-34) and a Criminal History Category of II (PSR ¶ 40) for a sentence of 51 - 63 months (PSR ¶ 135).

1

Although free of illegal substances in nearly two years of pre-trial release, Mr. Anderson has a substance abuse history involving marijuana and binge use of alcohol. See, "Substance Abuse," PSR ¶¶93 - 98 and attached February 8, 2007 report of Montgomery C. Brower, MD.  While defendant admits to binges and use of illegal drugs, he minimizes the severity of his problems.  For example, while he denies that substance abuse has been "overly problematic", he admits that it has a "small role in his current difficulties" and that he could sometimes "disappear for days".  PSR ¶95.  He admits to being a "severe binge user" and feels he would benefit from the RDAP. (PSR ¶98.)

Substance abuse has been a misfortune for Mr. Anderson's family.  An overview of family PSR information indicates that the majority of Mr. Anderson's nine brothers and sisters have suffered from substance abuse disorders.  (PSR ¶¶ 59 - 67.)  Not only may there be a family inclination to substance abuse, but defendant would also benefit from treatment of the indirect effects of family history. (See excerpt from report, *infra*.)  He has had some exposure to twelve-step recovery programs by supporting other family members, but (as is often true of functional substance abusers) he has felt "better than that" - an understandable comment given his family history with illegal drugs.

Mr. Anderson's personal history also shows that he could benefit from the RDAP.  Counsel points to symptoms such learning disabilities, attention deficit, his inability to finish high school and later college (though he obtained a GED).

(PSR ¶¶ 99 - 102.)   The forensic report mentions as follows:

> Based on Mr. Anderson's history and clinical presentation as reviewed above, in my clinical opinion, Mr. Anderson's diagnoses are best described as: Cannabis Abuse; Cocaine Abuse; Alcohol Abuse; Dysthymic Disorder; Anxiety Disorder Not Otherwise Specified; and Borderline Personality Traits. His substance disorder diagnoses reflect his abuse pattern of periodic binging on marijuana, cocaine and alcohol. In addition, he shows moderate cognitive impairment consistent with persisting effects of recurrent, heavy marijuana and cocaine abuse, although these deficits could also reflect symptoms of attention deficit. Dysthymic Disorder is the diagnostic term used for chronic, persistent symptoms of depression that do not meet criteria for a full major depressive episode. Mr. Anderson's history of probable psychosomatic complaints and panic attacks appear to reflect persistent underlying anxiety, but the available data are not sufficient to make a specific diagnosis.
>
> * * * * *
>
> Regarding his substance abuse issues, in my clinical opinion, Mr. Anderson would benefit from engaging in a comprehensive drug and alcohol treatment program.  Mr. Anderson also shows attitudes and behaviors typically seen in persons who have grown up with or live with persons who have problems of alcoholism and addiction.  Involvement in a structured, monitored treatment program stands a good chance of being effective, whereas Mr. Anderson has previously not effectively confronted his substance abuse issues in the community. Although Mr. Anderson currently focuses on mental health, rather than substance abuse, issues as the primary cause of his difficulties, if engaged in a structured substance abuse treatment program, he is more likely to recognize and finally address the full impact of drugs and alcohol on his life.

Feb. 8, 2007 Report, pp. 3 - 4.

ARGUMENT

Mr. Anderson qualifies for enrollment in the RDAP and this Court's recommendation should carry weight in BOP's decision. The admissions criteria are these:

i. The inmate must have a verifiable documented substance abuse problem - usually leading to a diagnostic impression of substance abuse under the DSM-IV. (Dr. Brower's report.)

ii. The inmate must have no serious mental impairment that interferes with the program. (None known.)

iii. The inmate must sign an agreement to participate in the Program on BOP terms. (Mr. Anderson is willing to participate. See, PSR ¶ 98.)

iv. The inmate must ordinarily be within 36 months of release.

v. The inmate's security level must be appropriate to the RDAP providing institution. (Self-reporting, known as "voluntary surrender" to BOP will lower the security classification.) Drug Abuse Programs Manual, PS 5330.10, Ch. 5, pp. 4 -5.

There are four Northeast Region BOP facilities offering the RDAP to men, FCC Allenwood (high, medium & low security), FCI Ft. Dix (low), FCI Fairton (medium & satellite camp minimum) and FCI McKean (medium, satellite camp minimum). BOP Policy Statement 5330.10, §5.2.3 (RDAP).

Self-reporting will be helpful to Mr. Anderson's classification as low or minimum security and allow him placement in one of the minimum and low security facilities that offer the RDAP. According to counsel's conversations with US BOP Office of Counsel, Mr. Anderson will have a better chance of placement in RDAP with a lower security classification. Self reporting (called "voluntary surrender" in the Policy Statement)

> allows for the subtraction of three points from the Security Point Total, Item 15, when the Judgment indicates the inmate was allowed to voluntarily surrender. For purposes of this item, voluntary surrender means the inmate was not escorted by a law enforcement officer to either the U.S. Marshals Office or the place of confinement. Additionally, this item applies only to post-sentencing voluntary surrender, and does not include cases where the inmate surrendered to the U.S. Marshals on the same day as sentencing....

Inmate Security Designation and Custody Classification Program Statement P5100.8 (September 12, 2006), Ch. 4, p. 5.

The three points for self reporting are likely to help Mr. Anderson obtain low security classification. His age of 36 places him in the next to lowest level. with only two points. P5100.8, Ch. 4, p. 12. His GED adds no points. Ch 4., p. 13. His "criminal history score" and "history of violence" (Ch. 4, items 8 & 9), are likely low to moderate. However, he will receive an extra point for drug or alcohol abuse within the last five years. P5100.8, Ch. 4, p. 13.

5

## CONCLUSION

For the reasons set forth above, defendant prays for a judicial recommendation to the DRAP at Ft. Dix and an order of post-conviction release to permitting self reporting.

*/s/ Kevin Barron*
Kevin Lawrence Barron BBO550712
Attorney for GENE ANDERSON
25 CHANNEL CNTR ST 408
BOSTON MA 02210-3416
Tel. No. 617-737-1555
Cellular 617-407-6837
kevin.barron@mac.com

## CERTIFICATE OF SERVICE

Counsel certifies that he has left a true copy of this memorandum at AUSA Neil Gallagher's office and delivered another copy of the same to USPO Jennifer Sinclair at her office this 9th day of February, 2007.

*/s/ Kevin Barron*
Kevin Lawrence Barron BBO550712

**Montgomery C. Brower, MD**
P.O. Box 812203
Wellesley, MA 02482
(617) 901-0564
forensicpsychiatry@brower.com

February 8, 2007

Kevin L. Barron, Esq.
25 Channel Center Street
Boston, MA 02210-3416

Re:   USA v. Gene Anderson
      Case No. 1:04-cr-10299 PBS

Dear Attorney Barron:

  Pursuant to your request, I have conducted a forensic psychiatric evaluation of your client, Gene Anderson, for purposes of aid in sentencing related to the above matter. This letter will summarize my clinical impressions regarding Mr. Anderson's diagnosis and need for treatment, based on the data available to me at the time of this evaluation.

  In the course of conducting this evaluation, I interviewed Mr. Anderson for about three hours on 2/2/07 in an office I use at McLean Hospital in Belmont, Massachusetts. I also conducted a telephone interview with Yaoshihura Akabane, MD, Mr. Anderson's current psychiatrist, on 2/5/07. In addition, I reviewed documents concerning Mr. Anderson, including federal indictments, Mr. Anderson's plea agreement and Presentencing Report, and East Boston Neighborhood Health Center medical records from 1996 to 2006.

  Before interviewing Mr. Anderson, I explained to him the nature and purpose of the evaluation, that the evaluation was not confidential, and that his participation was voluntary. I also reviewed with him my standard written authorization for release of information. Mr. Anderson showed his understanding of the warning of limitations on confidentiality by accurately paraphrased the warning of limitations of confidentiality and reviewing and signing the release.

  Mr. Anderson is a 36-year-old man who was born in Florida but grew up in Lynn, Massachusetts. Mr. Anderson's mother and biological father separated before he was born, and Mr. Anderson was 20 years old before he saw his biological father again. Mr. Anderson reports having since developed a friendly relationship with his father, but he identifies his step father, who died of cancer three years ago, as the man who really raised him. Mr. Anderson reports no history of physical or sexual mistreatment as a child, but he described a chaotic upbringing, marked by the effects of heavy drug abuse among several of his elder siblings and other members of his extended family.

  In this setting, Mr. Anderson reports he developed recurrent periods of depressed mood, with frequent thoughts of suicide dating back to his teenage years. He began smoking marijuana with peers at age 15 and progressed to using marijuana on a regular basis, smoking an ounce a day at his peak use. He was frequently truant and involved with delinquent peers, with whom he had regular encounters with police, at times leading

to involvement with juvenile court. He reports he was nevertheless able to earn his Graduate Equivalency Degree by 18. He reported that between 18 and 19 years old, his drug used increased and he began lacing his marijuana with cocaine. He also had periods of heavy drinking, but reported he never regularly used alcohol. His deteriorating behavior led his parents to kick him out of their home. At 19, he was convicted for drug-related conspiracy charges and served four years committed time until his release in July 1994, followed by his discharge from probation in 1997.

Following his release from prison, Mr. Anderson briefly sought mental health counseling through Dimmock Behavioral Health Center in Roxbury, Massachusetts, but stopped after about four sessions. He reported consulting with a psychiatrist in New York City about four and a half years ago. The psychiatrist reportedly diagnosed him with "bipolar disorder" and prescribed Zoloft (sertraline, an antidepressant medication) and trazodone (a sedating antidepressant medication commonly prescribed for sleep). Mr. Anderson thought the medication might have been helpful but was uncomfortable with the idea of taking medication and with apparent side effects, so he stopped after no more than two weeks. Records of these mental health encounters were not available to me at the time of this evaluation.

Mr. Anderson reported that he subsequently consulted with Dr. Pierce, a psychiatrist in Lynn, where he currently sees Dr. Akabane through the same mental health practice. Dr. Akabane reported that Mr. Anderson began seeing Dr. Pierce in December 2005, at which time Mr. Anderson was diagnosed with an "attention problem" and "rule out bipolar disorder [that is, a provisional diagnosis reflecting possible symptoms]." Dr. Akabane assumed responsibility for Mr. Anderson's care in August 2006, following Dr. Pierce's death. Mr. Anderson is prescribed Adderall (mixed amphetamine salts, a psychostimulant used to treat attention deficit/hyperactivity disorder) and Seroquel (quetiapine, an antipsychotic medication also used as a mood stabilizer). Mr. Anderson's treatment records reflect that Adderall has been "helpful for distraction," according to Dr. Akabane, but "no good documentation for bipolar disorder." Dr. Akabane reported he has observed no indications that Mr. Anderson posed a risk of harm to himself or others over the course of his treatment.

Mr. Anderson's primary care medical records reflect a pattern of frequent outpatient and urgent care visits for genitourinary and gastrointestinal complaints, as well as episodes of shortness of breath. Although he received numerous courses of antibiotics for suspected infections of the prostate, bladder or kidneys, repeated diagnostic testing and multiple specialist consultations have established no clear diagnosis. More recent clinical encounter notes strongly indicate that Mr. Anderson's physical complaints reflect anxiety and psychosomatic symptoms, rather than a physical disease process.

At the time of this evaluation, Mr. Anderson was living in his mother's house in Lynn, where his two young nieces and nephew also live in his mother's care. Mr. Anderson reported that his elder step sister has been unable to care for the children because of her severe drug addiction. Mr. Anderson reported traveling to New York City periodically to see his 5-year-old daughter, who lives there with his ex-girlfriend. Mr.

2

Anderson also reported having another daughter, 15, from a previous relationship; she lives with her mother in Los Angeles, California, and he has not contact with her. Although Mr. Anderson acknowledged chronic difficulty maintaining a job, he reported currently working part-time for Federal Express as well as in a local business belonging to a friend in Lynn.

On mental status examination, Mr. Anderson reported ongoing fluctuations in his mood, with periods of depressed mood lasting sometimes several days at a time, during which he tends to become isolated and withdrawn and "stay in bed." He reported chronic difficulties sleeping without medication. Although he acknowledged ongoing periodic suicidal thoughts, he emphasized that he had never engaged in any suicidal or deliberately self-injurious behavior, had never formed any intention or plan to harm himself, and that he did not feel he would act on his suicidal thoughts.

Mr. Anderson also reported episodes of acute anxiety that tended to come on suddenly and without warning, accompanied by shortness of breath. He described periods of engaging in risky or reckless behavior (for example, frequenting strip clubs and bars in dangerous neighborhoods at night), temper outbursts and instability in intimate relationships, and chronic feelings of emptiness. His thoughts tended to focus on feelings of distress about his chronic problems functioning at work and in intimate relationships, and on his wish to control and change the behavior of others, particularly family members affected by addiction. On formal cognitive testing, Mr. Anderson showed moderate impairments of attention, concentration, short-term memory and abstract reasoning ability.

Regarding his use of drugs and alcohol, Mr. Anderson reported that he has not used any illicit drugs in the past two years. Prior to that, Mr. Anderson described engaging in periodic two- to three-day binges, during which he would intensively smoke marijuana laced with cocaine and drink a six-pack of wine coolers at a sitting. He otherwise endorsed no symptoms reflecting physiological dependence on drugs or alcohol. He reported having attended meetings of Alcoholic Anonymous and Narcotics Anonymous in years past, but indicated he did not feel Twelve Step programs were suited to his problems. Mr. Anderson's Presentence Report notes three urine toxicological screens positive for drugs of abuse in November and December 2005, all of which were deemed to reflect legitimate prescription of medication for treatment of physical conditions.

Based on Mr. Anderson's history and clinical presentation as reviewed above, in my clinical opinion, Mr. Anderson's diagnoses are best described as: Cannabis Abuse; Cocaine Abuse; Alcohol Abuse; Dysthymic Disorder; Anxiety Disorder Not Otherwise Specified; and Borderline Personality Traits. His substance disorder diagnoses reflect his abuse pattern of periodic binging on marijuana, cocaine and alcohol. In addition, he shows moderate cognitive impairment consistent with persisting effects of recurrent, heavy marijuana and cocaine abuse, although these deficits could also reflect symptoms of attention deficit. Dysthymic Disorder is the diagnostic term used for chronic, persistent symptoms of depression that do not meet criteria for a full major depressive episode. Mr.

3

Anderson's history of probable psychosomatic complaints and panic attacks appear to reflect persistent underlying anxiety, but the available data are not sufficient to make a specific diagnosis.

Mr. Anderson's borderline personality traits include his pattern of emotional instability in intimate relationships, mood fluctuations, persistent suicidal thinking, reckless behavior and chronic feelings of emptiness. In my clinical opinion, these personality traits, coupled with Mr. Anderson's depressive disorder and effects of substance abuse, most likely account for his symptoms thought to reflect possible bipolar disorder. Although bipolar disorder cannot be completely ruled out, based on the data available to me, Mr. Anderson does not present with a history or symptoms of mania (sustained periods of abnormally elated or irritable mood, pressured speech, racing thoughts, grandiose thinking, markedly increased activity and markedly decreased need for sleep), which would indicate bipolar disorder. Mr. Anderson, nevertheless, should be monitored for the emergence of such symptoms.

Regarding his substance abuse issues, in my clinical opinion, Mr. Anderson would benefit from engaging in a comprehensive drug and alcohol treatment program. Mr. Anderson also shows attitudes and behaviors typically seen in persons who have grown up with or live with persons who have problems of alcoholism and addiction. Involvement in a structured, monitored treatment program stands a good chance of being effective, whereas Mr. Anderson has previously not effectively confronted his substance abuse issues in the community. Although Mr. Anderson currently focuses on mental health, rather than substance abuse, issues as the primary cause of his difficulties, if engaged in a structured substance abuse treatment program, he is more likely to recognize and finally address the full impact of drugs and alcohol on his life.

Regarding his psychiatric care, in my clinical opinion, Mr. Anderson would benefit from an extended period without psychiatric medication, during which time he should be regularly assessed and monitored in order to develop a clearer picture of his diagnosis and need for carefully selected medications. Given Mr. Anderson's history of drug and alcohol abuse, I would recommend that he not be prescribed medications that have the potential for abuse, including psychostimulants such as Adderall. Although the data available to me at the time of this evaluation do not indicate that Mr. Anderson poses an acute risk of harm to himself, given his history of depressive symptoms, suicidal thinking and substance abuse, he is at increased overall risk and should be assessed and monitored for suicidality, particularly in a correctional setting.

Thank you for this consultation. Please contact me with any questions.

Sincerely,


Montgomery C. Brower, MD
Diplomate in Forensic Psychiatry, A.B.P.N.
Clinical Instructor in Psychiatry, Harvard Medical School

4